UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**MICHAEL MARSHALL,**
    **Plaintiff**

**CIVIL ACTION**

**VERSUS**

**NO. 23-1319**

**CRAIG WEBRE, ET AL.,**
    **Defendants**

**SECTION: "E" (1)**

## ORDER AND REASONS

Before the Court is the second motion to dismiss Plaintiff's amended complaint filed by Defendants Sheriff Craig Webre and the Lafourche Parish Sheriff's Office.[1] Plaintiff Michael Marshall filed an opposition to the motion.[2] For the following reasons, the motion to dismiss is **GRANTED** as to defendant Lafourche Parish Sheriff's Office and **DENIED** as to Sheriff Craig Webre, except as to the claim regarding understaffing, which is **DISMISSED WITH PREJUDICE**.

## BACKGROUND[3]

Plaintiff Michael Marshall was incarcerated at the Lafourche Parish Detention Center ("LPDC") at the time of the events in question.[4] Mr. Marshall alleges that he did not receive appropriate medical care at LPDC following complaints of back pain, difficulty walking, and a subsequent fall that rendered him partially paralyzed and incontinent.[5]

Prior to his incarceration, Mr. Marshall was diagnosed with metastatic prostate cancer.[6] This diagnosis was known to the employees of CORRECTHEALTH, LLC and

---

[1] R. Doc. 21.
[2] R. Doc. 25.
[3] The background facts are taken from the allegations in the second amended complaint. R. Doc. 19.
[4] R. Doc. 19 at ¶ 4.
[5] *Id.* at ¶¶ 5-9.
[6] *Id.* at ¶ 4.

1

CORRECTHEALTH LAFOURCHE, LLC (collectively, "CH") at LPDC.[7] On or about March 30, 2022, Mr. Marshall alleges he began having back pain, which worsened over the next several days.[8] When Mr. Marshall was seen by a CH nurse on April 1, 2022, he claims that he indicated his back pain had worsened and he was having trouble walking and moving his lower extremities.[9] The nurse provided ibuprofen.[10]

On April 2, 2022, Mr. Marshall fell while attempting to urinate, due to the difficulties with moving his lower extremities.[11] Plaintiff alleges that his body became paralyzed after the fall, and he began experiencing urinary incontinence and the inability to defecate.[12] After informing a CH nurse of his condition, Mr. Marshall alleges he was instructed to "lay [sic] in bed."[13] Four days after the fall, on April 6, 2022, Plaintiff was transported to Chabert Medical Center for treatment of the injuries he sustained as a result of the fall.[14] Plaintiff was subsequently taken by helicopter to University Medical Center, where he underwent emergency surgery.[15]

Plaintiff sues Craig Webre in his official capacity as Sheriff of Lafourche Parish; the Lafourche Parish Sheriff's Office ("LPSO"); Archie Chaisson III in his official capacity as Lafourche Parish President; the Parish of Lafourche; and CH for compensatory and punitive damages under 42 U.S.C. § 1983 for violations of his Eighth and Fourteenth

---

[7] *Id.*
[8] *Id.* at ¶ 5.
[9] *Id.* at ¶¶ 6-7.
[10] *Id.* at ¶ 6.
[11] *Id.* at ¶ 7.
[12] *Id.*
[13] *Id.* at ¶¶ 7-7(a)
[14] *Id.* at ¶ 8.
[15] *Id.*

Amendment rights to adequate medical care while detained.[16] Plaintiff also seeks attorneys' fees under 42 U.S.C. § 1988.[17]

Plaintiff originally filed a Petition for Damages against Defendants in state court on March 22, 2023.[18] Defendants removed the matter to the United States Court for the Eastern District of Louisiana on April 20, 2023 on the basis of federal question jurisdiction, pursuant to 28 U.S.C. § 1331.[19] On June 20, 2023, Sheriff Webre and LPSO filed their first motion to dismiss.[20] On July 11, 2023, this Court granted Plaintiff leave to file a second amended complaint,[21] which Plaintiff filed on July 25, 2023.[22] The Court then denied Defendants' first motion to dismiss without prejudice.[23] Sheriff Webre and LPSO now move to dismiss Plaintiff's § 1983 claims against them in the second amended complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[24] Plaintiff's § 1983 claims against Sheriff Webre and LPSO are set forth below.

## **LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may only dismiss a complaint for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief.[25] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[26] "A claim

---

[16] *Id.* at ¶¶ 1, 16-17, 30
[17] *Id.* at ¶ 30.
[18] R. Doc. 1-1.
[19] R. Doc. 1 at ¶ 4.
[20] R. Doc. 12.
[21] R. Doc. 18.
[22] R. Doc. 19.
[23] R. Doc. 18.
[24] R. Doc. 21.
[25] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).
[26] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[27] The Court, however, does not accept as true legal conclusions or mere conclusory statements, and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[28] "[T]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements" or "naked assertion[s] devoid of further factual enhancement" are not sufficient.[29]

However, "legal conclusions can provide the framework of a complaint, [if] they [are] supported by factual allegations."[30] "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[31] Moreover, claims of municipal liability under § 1983 are not subject to a more heightened pleading standard that other types of clams.[32]

## LAW AND ANALYSIS

Plaintiff alleges that it is the policy, practice, or custom of Sheriff Webre and LPSO, among other defendants, to "ignore legitimate and serious complaints of pain by inmates and to fail to provide necessary and basic medical care to inmates."[33] Moreover, Plaintiff alleges that Sheriff Webre and LPSO, among other defendants, had no established policies

---

[27] *Iqbal*, 556 U.S. at 678.
[28] *S. Christian Leadership Conf. v. Sup. Ct. of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).
[29] *Iqbal*, 556 U.S. at 663, 678 (citations omitted).
[30] *Id.* at 679.
[31] *Id.*
[32] *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 167 (1993).
[33] R. Doc. 19 at ¶ 9.

4

or rules which provided that inmates at LPDC were entitled to receive prompt medical care for serious medical conditions, such as Plaintiff's condition following his fall.[34]

Plaintiff further alleges that Sheriff Webre and LPSO, among other defendants, were aware of the inadequate staffing, training, and supervision of medical and correctional staff with regard to medical care and treatment of sick and/or injured inmates.[35] Plaintiff avers that Sheriff Webre and LPSO were ultimately responsible for hiring, training, supervising, disciplining, and/or retaining all employees at LPDC, and were responsible for all policies and procedures at LPDC.[36] The Court addresses each of these claims in turn.

## I. LPSO is Not a Proper Party to This Action.

In their motion to dismiss, Defendants argue all claims against LPSO should be dismissed, since LPSO is not an entity capable of being sued in federal court.[37] Plaintiff concedes that LPSO is an improper party for this reason in his opposition.[38] Accordingly, the claims against Defendant LPSO are dismissed with prejudice.

---

[34] *Id.* at ¶ 14.
[35] *Id.* at ¶ 10.
[36] *Id.* at ¶ 13.
[37] R. Doc. 21-1 at 5. ("The capacity of a non-corporate entity to sue or be sued in federal court is governed by the law of the state where the district court is located. Fed.R.Civ.P. 17(b)(3). "The 'law' of the state includes the 'whole law,' that is, both statutes and judicial decisions." *Morice v. Hosp. Serv. Dist. #3*, 430 F. Supp. 3d 182, 198 (E.D. La. 2019)(citing *Klebanow v. N.Y. Produce Exch.*, 344 F.2d 294, 297 (2d Cir. 1965)). Accordingly, federal courts sitting in Louisiana will look to Louisiana law to determine whether sheriff's offices, jails, or correctional facilities are entities capable of suing or being sued. To possess such capacity under Louisiana law, an entity must qualify as a "juridical person," which is "an entity to which the law attributes personality, such as a corporation or partnership." La. Civ. Code art. 24. "The State of Louisiana … grants no such legal status to any parish sheriff's office." *Roy v. Orleans Par. Sheriff's Off.*, No. CIV.A. 09-6794, 2009 WL 4730697, at *2 (E.D. La. Dec. 4, 2009). Thus, they can neither sue nor be sued. *See Cozzo v. Tangipahoa Parish Council-President Government*, 279 F.3d 273, 283 (5th Cir. 2002); also see *Ruggiero v. Litchfield*, 700 F.Supp. 863, 865 (M.D.La.1988).").
[38] R. Doc. 25 at 1 n.1.

## II. Plaintiff has Stated a Claim Against Sheriff Craig Webre in His Official Capacity as Sheriff of Lafourche Parish.

Plaintiff's amended complaint names Sheriff Webre in his official capacity, as Sheriff of Lafourche Parish.[39] "A suit against a government official in his official capacity is treated as suit against the entity."[40] Thus, a suit against Sheriff Webre in his official capacity must be treated as a suit against the municipal entity of LPSO.[41] Municipal liability under § 1983, or *Monell* liability, requires proof of three elements: 1) a policymaker, 2) an official policy or custom, and 3) a violation of constitutional rights whose 'moving force' is the policy or custom.[42]

### A. Sheriff Webre is the Final Policymaker as to the Provision of Medical Care in the Lafourche Parish Detention Center.

Defendants argue Sheriff Webre does not administer medical care to inmates at LPDC.[43] Defendants contend since medical care is independently administered by CH, "a private corporation which holds a contract [with LPSO] to provide medical care to the inmates," Sheriff Webre cannot be liable as a policymaker under § 1983.[44] However, it is well-established that the Sheriff is the final policymaker as to the provision of medical care in parish jails.[45]

The determination of whether the Sheriff is a final policymaker is a matter of Louisiana state law.[46] The Sheriff's duty of operating LPDC and ensuring the safety and

---

[39] R. Doc. 19 at ¶ 1.
[40] *Belcher v. Lopinto*, 492 F. Supp.3d 636, 658 (E.D. La. 2020) (citing *Lee v. Morial,* No. CIV. A 99-2952, 2000 WL 725882, at *2.
[41] *Id.*
[42] *Monell v. Dep't of Soc. Servs. of NY*, 436 U.S. 658, 694 (1978).
[43] R. Doc. 21-1 at 4.
[44] *Id.* at 4-5.
[45] *Belcher*, 492 F. Supp.3d at 658; *see also Quatroy v. Jefferson Par. Sheriff's Off.*, 2009 WL 1380196 * 1 (E.D. La. 2009).
[46] *McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 117 (1997) (citing *St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988); *Pembaur v. Cincinnati*, 475 U.S. 469, 483 (1986) ("'[W]hether a particular official has final policymaking authority' is a question of state law [.]'").

6

well-being of the people he detains is derived from the Louisiana Constitution.[47] After all, Sheriffs are the "keeper[s] of the public jail"[48] and the managing authority for the functioning of the jail they run, and, "ha[ve] the obligation to provide medical care for the prisoners."[49]

Defendants appear to assert LPSO's fulfillment of its duty under La. R.S. 15:703 (by contracting with CH) somehow relieves the Sheriff of his constitutional duty to ensure the safety and well-being of inmates and pre-trial detainees.[50] However, this contention is not supported by relevant caselaw or Louisiana law. This Court provided a detailed analysis of this issue in *Mixon v. Pohlmann*;[51] the relevant reasoning from that decision follows.

In *Quatroy v. Jefferson Parish Sheriff's Office*, the family of a deceased inmate brought a § 1983 municipal liability claim against Newell Normand in his official capacity as the Sheriff of Jefferson Parish.[52] The pretrial detainee was a known drug user.[53] Despite this knowledge, the pretrial detainee was not provided sufficient medical care, resulting in his death.[54] On the issue of whether Sheriff Normand was a policymaker, Judge Vance recognized that "Court[s] [must] look to Louisiana law to ascertain the extent of the Sheriff's policy-making authority."[55] Faced with an argument by the defendant that "the Sheriff was not the official source of policies relating to the healthcare of inmates" because of the Parish's responsibility to appoint a jail doctor or contract with a healthcare

---

[47] *Jones v. St. Tammany Par. Jail*, 4 F. Supp. 2d 606, 613 (E.D. La. 1998) (citing La. Const. art. 5 § 27).
[48] La. R.S. 15:704.
[49] *Jones*, 4 F. Supp. 2d at 613.
[50] R. Doc. 21 at 4-5.
[51] 2022 WL 2921733 (E.D. La. July 25, 2022).
[52] 2009 WL 1380196 *1 (E.D. La. 2009).
[53] *Id.*
[54] *Id.*
[55] *Id.* at *4.

7

provider,[56] the court parsed through the responsibilities of the Sheriff versus the parish governing authority.

In terms of the Sheriff, under La. R.S. 15:704 and article 5 § 27 of the Louisiana Constitution, the Sheriff is the keeper of the public jail of his or her parish.[57] "Courts have recognized . . . sheriffs are the final policymakers when it comes to the management of jails," the Sheriff is charged with the jail's administration, and the Sheriff has the power to "by all lawful means preserve the peace and apprehend all disturbers thereof."[58] The parish governing authority, on the other hand, is responsible for either appointing a jail physician or contracting with a healthcare provider to provide medical services for detainees and inmates.[59] Recognizing the shared responsibility for the medical treatment of detainees and inmates, the Court held "despite the parish's authority to choose the jail's healthcare provider, the Sheriff is the final policymaker when it comes to dealing with inmates suffering [from] withdrawal *within the jail*"[60] because "Louisiana law makes the Sheriff the relevant policymaker in this regard."[61]

More recently, in *Belcher v. Lopinto*, the court was faced with, among other issues, a § 1983 municipal liability claim against Newell Normand and Joseph Lopinto in their official capacities as current and former Sheriffs of Jefferson Parish following the suicide death of a pretrial detainee at the Jefferson Parish Correctional Center.[62] In *Belcher*, the governing authority of Jefferson Parish satisfied its legal duty under La. R.S. 15:703 by

---

[56] *Id.*
[57] *Id.* at *5.
[58] *Id.*
[59] *Id.* ("The parish authority is generally not liable for the action or inaction of a physician or healthcare provider. But the parish authority may be liable if it exercises 'gross negligence of willful misconduct in the performance of its duties and obligations imposed by [La. R.S. 15:703]' and that gross negligence of willful misconduct is a 'substantial factor' in causing a prisoner's injury.").
[60] *Id.* (emphasis in original).
[61] *Id.* at *6.
[62] 492 F.Supp.3d 636, 644 (E.D. La. 2020).

8

contracting CorrectHealth Jefferson, LLC to provide medical and mental care to inmates and detainees.[63] Even though this contractual relationship existed, as to the policymaker element of a municipal liability claim, the *Belcher* court concluded "Sheriffs Normand and Lopinto in their official capacities . . . [were] 'policymakers' for purposes of § 1983 liability" because "Sheriffs are the keepers of parish jails and final policymakers with respect to jail management" under Louisiana law.[64]

As explained in *Mixon*, the Court agrees with the analyses in *Quatroy* and *Belcher* and finds Defendant Sheriff Webre is a relevant policymaker regarding Plaintiffs' municipal liability claims.[65] The allegation that a contractual relationship exists between LPSO and CH does not change this legal reality. This result is consistent with Louisiana law, *Mixon*, *Quatroy*, and *Belcher*. Accordingly, Plaintiff has alleged sufficient facts to state a claim against Sheriff Webre in his official capacity as a policymaker for LPDC for the purposes of § 1983 liability.

### B. Plaintiff has Alleged Sufficient Facts to Support a Claim of Official Policies and/or Customs Attributable to Sheriff Webre.

For purposes of *Monell* liability, an official policy may be either 1) "policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers" or 2) "A persistent, widespread practice […] which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy."[66] In his amended complaint, Plaintiff alleges Sheriff Webre has maintained

---

[63] *Id.*
[64] *Id.* at 658; *see* La. R.S. 15:704 ("[e]ach sheriff shall be the keeper of the public jail of his parish, and shall by all lawful means preserve the peace and apprehend all disturbers thereof, and other public offenders.").
[65] 2022 WL 2921733 at *8.
[66] *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir.).

9

persistent widespread practices regarding the provision of healthcare and the staffing and training of LPDC, which amount to *de facto* municipal policies.[67]

### 1. *De Facto* Policies Regarding Failure to Provide Adequate Medical Care

In his amended complaint, Plaintiff alleges Sheriff Webre maintained persistent, widespread practices of 1) failing to provide adequate, necessary, and/or basic medical attention to inmates at LPDC[68] and, relatedly, 2) ignoring legitimate and serious medical needs and/or complaints of pain by inmates.[69] Defendant Webre argues Plaintiff has failed to allege sufficient facts to support a claim that these policies existed because Plaintiff has failed to identify other inmates who have been denied adequate medical care.[70] Defendant Webre contends that without the identification of these other inmates, Plaintiff does not allege sufficient facts to support a claim that Sheriff Webre maintained *de facto* policies of failing to provide adequate medical care.[71]

However, the cases cited by Defendant Webre to support his argument were decided on summary judgment, not at the pleading stage.[72] The Court knows of no case suggesting this level of factual support is required at the pleading stage. Rather, the relevant pleading standard, as defined by *Ashcroft v. Iqbal* (2009), provides "legal conclusions can provide the framework of a complaint, [if] they [are] supported by factual allegations."[73]

---

[67] R. Doc. 19 at ¶ 13-14, 19.
[68] *Id.* at ¶ 9, 21.
[69] *Id.* at ¶ 9, 28.
[70] R. Doc. 21-1 at 8.
[71] *Id.*
[72] *Id.* at 9 (citing *Arshad ex rel. Arshad v. Congemi*, 2009 WL 585633 at *8-9 (5th Cir. 2009) (unpublished); *Gates v. Texas Dep't of Protective & Regul. Servs.*, 537 F.3d 404 (5th Cir. 2008)).
[73] *Iqbal*, 556 U.S. at 679.

10

Much of Plaintiff's inartful amended complaint is stated in the language of legal conclusions. However, Plaintiff includes factual allegations regarding his own experiences in LPDC which, assuming their veracity, as the Court must, support the claim that Sheriff Webre maintained *de facto* policies of "ignoring legitimate and serious medical needs," and "failing to provide adequate medical attention to inmates."[74] Plaintiff alleges he suffered a fall at LPDC, after which his body became paralyzed.[75] Plaintiff alleges his complaints of paralysis were "ignored" by the medical staff at LPDC who merely instructed him to "lay [sic] in bed."[76] Plaintiff avers it was not until four days after the fall that he was transported to Chabert Medical Center for treatment of his injuries.[77] Plaintiff was allegedly subsequently taken by helicopter to University Medical Center, where he underwent emergency surgery.[78] In Plaintiff's own words, "even a lay person would know that . . . inability to move ones legs is a severe medical issue, . . . requiring immediate medical treatment."[79] Indeed, common sense would suggest that failure to adequately treat an inmate who was experiencing paralysis for four days plausibly supports the conclusion that a *de facto* policy existed at LPDC of ignoring serious medical needs and/or failing to provide adequate medical attention. The allegation that Plaintiff immediately underwent emergency surgery after receiving outside care further supports this conclusion.

Relatedly, Plaintiff alleges Sheriff Webre failed to establish a policy or rule which mandated that inmates of the jail were to receive prompt medical attention relative to

---

[74] R. Doc. 19 at ¶ 9, 28.
[75] *Id*. at ¶ 7.
[76] *Id*.
[77] *Id*. at ¶ 8.
[78] *Id*.
[79] *Id*. at ¶ 7(b).

11

their serious medical needs.[80] Defendant Webre argued that Plaintiff failed to allege sufficient facts of "'a pattern of similar constitutional violations' due to deficient policies."[81] Once again, Defendant erroneously relies on a case decided at the summary judgment stage to argue that specific allegations related to such an alleged pattern is required to plausibly state a claim of a *de facto* policy at the pleading stage.[82]

As discussed above, the alleged inadequate treatment of Plaintiff's paralysis, along with Plaintiff's subsequent emergency surgery support the inference that Plaintiff was in blatant need of significant medical care, which he allegedly did not receive at LPDC throughout the four days following his fall. Plaintiff's allegations about his treatment plausibly support a claim that Sheriff Webre failed to establish and/or enforce a policy requiring that inmates receive prompt and adequate medical attention.

Accordingly, the Court "draw[s] on its judicial experience and common sense"[83] to find Plaintiff's amended complaint alleges sufficient facts to support a claim that Sheriff Webre maintained insufficient policies and/or failed to maintain any policies regarding the adequate provision of healthcare at LPDC.

### 2. *De Facto* Policies Regarding Understaffing and Failure to Train

In his amended complaint, Plaintiff further alleges Sheriff Webre maintained persistent, widespread practices of 1) failing to train and/or supervise the employees of LPDC with regard to the medical care and treatment of sick and/or injured inmates[84] and,

---

[80] *Id.* at 19 ¶ 14.
[81] R. Doc. 21-1 at 9.
[82] *Id.* at 9 (citing *Porter v. Epps*, 659 F.3d 440, 447 (5th Cir. 2011)).
[83] *Iqbal*, 556 U.S. at 679.
[84] R. Doc. 19 at ¶¶ 10, 28, 28(b).

12

relatedly, 2) inadequately staffing LPDC.[85] The Court addresses each of these alleged policies in turn.

### a. Failure to Train

"[T]he failure to provide proper training may fairly be said to represent a policy for which the [Defendants are] responsible, and for which [they] may be held liable if it actually causes injury."[86] Defendant Webre argues Plaintiff has failed to allege with sufficient specificity how the training program at issue is defective.[87] Again, Defendant erroneously relies on a case decided at the summary judgment stage to support his contention that detailed allegations of the deficient training program are required to plausibly state a claim of this *de facto* policy at the pleading stage.[88] Defendant contends that Plaintiff provided only conclusory allegations without "any facts whatsoever to support [his] claim."[89]

However, as discussed above, Plaintiff includes factual allegations regarding his own experiences in LPDC which, assuming their veracity, support the claim that Sheriff Webre maintained *de facto* policies of failing to train the employees at LPDC. Plaintiff alleges after his fall, he suffered from paralysis for *four days* before being provided with adequate and necessary medical treatment.[90] The Court reasonably infers from these allegations that several staff members at LPDC were aware, or should have been aware, of Plaintiffs condition over the course of four days. The lack of response from those staff members plausibly indicates a failure on the part of Sheriff Webre to train and/or

---

[85] *Id.* at ¶ 9, 28.
[86] *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).
[87] R. Doc. 21-1 at 10.
[88] *Id.* at 10 (citing *Goodman v. Harris Cnty.*, 571 F.3d 388 (5th Cir. 2009)).
[89] *Id.* at 11.
[90] R. Doc. 19 ¶¶ 7-8.

supervise the employees of LPDC with regard to the medical care and treatment of sick and/or injured inmates.

Accordingly, the Court "draw[s] on its judicial experience and common sense"[91] to find Plaintiff's amended complaint alleges sufficient facts to support a claim that Sheriff Webre maintained a policy of failing to train the employees of LPDC.

### b. Understaffing

Plaintiff alleges Defendant Webre was aware of "inadequate staffing" at LPDC and "knew, must have known, or should have know that the standard of care for those experiencing health crises could not be met by the . . . staffing at the prison."[92] In his first motion to dismiss, Defendant Webre argued that Plaintiff did not allege sufficient facts to state a claim of understaffing.[93] Plaintiff failed to provide any additional facts supporting these allegations in his amended complaint.[94] While the Court may reasonably infer that, subsequent to Plaintiff's fall, *some* employees were on duty who did not adequately respond to the situation, as discussed above, the Court has no indication of *how many* employees were on duty at that time, and whether LPDC could be considered understaffed. The Court agrees with Defendant Webre that "Plaintiff's general and conclusory allegations of understaffing,"[95] without more factual support, cannot support a claim that Sheriff Webre maintained a policy of understaffing LPDC. Accordingly, Plaintiff's claim against Sheriff Webre regarding understaffing is dismissed with prejudice.

---

[91] *Iqbal*, 556 U.S. at 679.
[92] R. Doc. 19 at ¶¶ 10-11.
[93] R. Doc. 12-1 at 9-10.
[94] *See generally*, R. Doc. 19.
[95] R. Doc. 21-1 at 11.

14

### C. Plaintiff has Alleged Sufficient Facts to Support a Claim of Deliberate Indifference Against Sheriff Webre.

The third element of a *Monell* claim is proof of a violation of constitutional rights whose 'moving force' is the policy or custom.[96] Mr. Marshall alleges violations of both his Eighth and Fourteenth Amendment rights as a result of the *de facto* policies of Sheriff Webre.[97]

"The Eighth Amendment ensures the safety of *convicted prisoners* while due process under the Fourteenth Amendment protects *pretrial detainees*."[98] In this case, Mr. Marshall appears to have been a pretrial detainee.[99] Nevertheless, "[t]he proper analysis of each category of claims is the same, as [the Fifth Circuit's] 'Fourteenth Amendment case law concerning pretrial detainees [is based] on the Supreme Court's Eighth Amendment precedent concerning prisoners.'"[100]

A pretrial detainee may prove a constitutional violation by demonstrating either "an unconstitutional condition of confinement" or an "unconstitutional episodic act or omission."[101] These two avenues for § 1983 claims come with separate inquiries.[102] Plaintiff has clarified in his opposition to the instant motion that he alleges a violation based on an unconstitutional episodic act or omission.[103]

---

[96] *Monell*, 436 U.S. at 694.
[97] R. Doc. 19 at ¶¶ 17-21.
[98] *Baughman v. Hickman*, 935 F.3d 302, 306 (5th Cir. 2019) (emphasis added) (citing *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996)).
[99] R. Doc. 19 at ¶ 18. The allegations provided in Plaintiff's amended complaint do not explicitly address whether Mr. Marshall was a pretrial detainee or a convicted prisoner at the time of the alleged injury. However, his amended complaint appears to distinguish his position from "convicted prisoners." (R. Doc. 19 ¶ 18). As such, the Court assumes Mr. Marshall was a pretrial detainee for the purposes of this ruling.
[100] *Baughman*, 935 F.3d at 306 (third alteration in original) (quoting *Garza v. City of Donna*, 922 F.3d 626, 634 (5th Cir. 2019)).
[101] *Cadena v. El Paso Cnty.*, 946 F.3d 717, 727 (5th Cir. 2020).
[102] *Id.*
[103] R. Doc. 25 at 5.

In an episodic act or omission case, courts "employ different standards depending on whether the liability of the individual defendant or the municipal defendant is at issue."[104] In this case, Sheriff Webre is sued in his official capacity, and, as such, the liability of the municipal defendant only is at issue.[105] "To establish municipal liability in an episodic-act case, a plaintiff must show '(1) that the municipal employee violated [the pretrial detainee's] clearly established constitutional rights with subjective deliberate indifference; and (2) that this violation resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference.'"[106]

In his amended complaint, Plaintiff alleges Sheriff Webre maintained the *de facto* policies regarding the provision of health care and the deficient training of employees at LPSO, discussed above, with deliberate indifference.[107] "To succeed on a deliberate-indifference claim, plaintiffs must show that (1) the official was 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' and (2) the official actually drew that inference."[108] "[O]fficial conduct must be 'wanton,' which is defined to mean 'reckless.'"[109] Deliberate indifference "requires that the defendant act with 'something more than mere negligence' but 'less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'"[110]

---

[104] *Baughman*, 935 F.3d at 307 (quoting *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999)).
[105] *See* discussion *supra* Section A.
[106] *Cadena*, 946 F.3d at 728 (alteration in original) (quoting *Brumfield v. Hollins*, 551 F.3d 322, 331 (5th Cir. 2008)).
[107] R. Doc. 19 at ¶¶ 10, 13-14, 21, 28; *see* discussion *supra* Section I(B).
[108] *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2015) (quoting *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 755 (5th Cir. 2001)).
[109] *Baughman*, 935 F.3d at 307 (quoting *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017)).
[110] *Cadena*, 946 F.3d at 728 (quoting Farmer v. Brennan, 511 U.S. 825, 835 (1994)).

1. **Plaintiff Has Alleged Sheriff's Policies Regarding Failure to Provide Adequate Medical Care Were Adopted with Deliberate Indifference.**

Plaintiff alleges Defendant Webre maintained the inadequate policies regarding the provision of medical care, discussed above, with deliberate indifference.[111] Plaintiff avers that Defendant's knowledge that the deficient policies were "inadequate and posed a danger of serious bodily harm to inmates at LPDC," and Defendant's refusal to "take action to correct these policies," indicate "deliberate indifference to the serious risks to inmates."[112] The Court agrees. Defendant Webre devotes the majority of his motion to dismiss to arguments that the alleged inadequate policies regarding the provision of healthcare do not exist, and does not contest Plaintiff's contention that if, as alleged, the policies exist, they were adopted and maintained with deliberate indifference.[113] Accordingly, the Court finds Plaintiff has alleged sufficient facts to support a claim that Sheriff Webre maintained the policies regarding failure to provide adequate medical care with deliberate indifference.

2. **Plaintiff Has Alleged Sheriff's Policies Regarding Failure to Train Were Adopted with Deliberate Indifference.**

Plaintiff alleges Defendant Webre was deliberately indifferent in his failure to train the employees of LPDC.[114] Defendant Webre argues Plaintiff has not alleged sufficient facts to show deliberate indifference in his failure to train because Plaintiff has not "cited a pattern of similar constitutional violations by untrained employees" which would put the Sheriff on notice that a substantial risk of serious harm existed.[115] Defendant supports

---

[111] R. Doc. 19 at ¶ 15, 20, 21, 28
[112] *Id.* at ¶ 15.
[113] *See generally* R. Doc. 21-1.
[114] R. Doc. 19 at ¶ 28, 28(b).
[115] R. Doc. 21-1 at 10.

17

this contention with a citation to an opinion issued on appeal after a jury verdict,[116] and so once again, does not properly assess the level of factual specificity required at the pleading stage. Assuming the Sheriff failed to properly train the employees of LPDC as to the provision of necessary medical treatment, as alleged, the Court may properly infer that the existence of this deficiency in training was reckless, in and of itself, since it involved such a crucial issue of safety for the jail. Accordingly, the Court finds Plaintiff has alleged sufficient facts to support a claim that Sheriff Webre maintained the policies regarding failure to train with deliberate indifference.

## CONCLUSION

**IT IS ORDERED** that the motion to dismiss is **GRANTED** as to defendant Lafourche Parish Sheriff's Office and **DENIED** as to Sheriff Craig Webre, except as to the claim regarding understaffing, which is **DISMISSED WITH PREJUDICE**. Plaintiff Michael Marshall's claims against Lafourche Parish Sheriff's Office under 42 U.S.C. § 1983 are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this 13th day of September, 2023.

_____
**SUSIE MORGAN
UNITED STATES DISTRICT JUDGE**

---

[116] *Id.* (citing *Connick v. Thompson*, 563 U.S. 51, 62 (2011)).