## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MICHAEL MARSHALL,**<br>    **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO.  23-1319** |
| **CRAIG WEBRE, ET AL.,**<br>    **Defendants** | **SECTION: "E" (1)** |

### ORDER AND REASONS

Before the Court is the second motion to dismiss filed by Defendants Correcthealth, LLC ("CH") and Correcthealth Lafourche, LLC ("CHL").[1] Plaintiff Michael Marshall filed an opposition to the motion.[2] Defendants filed a reply.[3] For the following reasons, the motion to dismiss is **GRANTED** as to CH and **DENIED** as to CHL, except as to the claim regarding understaffing, which is **DISMISSED WITH PREJUDICE**.

### BACKGROUND[4]

Plaintiff Michael Marshall was incarcerated at the Lafourche Parish Detention Center ("LPDC") at the time of the events in question.[5] Mr. Marshall alleges that he did not receive appropriate medical care at LPDC following complaints of back pain, difficulty walking, and a subsequent fall that rendered him partially paralyzed and incontinent.[6]

Prior to his incarceration, Mr. Marshall was diagnosed with metastatic prostate cancer.[7] This diagnosis was known to employees of CH and CHL at LPDC.[8] On or about

---

[1] R. Doc. 26.
[2] R. Doc. 28.
[3] R. Doc. 32.
[4] The background facts are taken from the allegations in the second amended complaint. R. Doc. 19.
[5] R. Doc. 19 at ¶ 4.
[6] *Id.* at ¶¶ 5-9.
[7] *Id.* at 4.
[8] *Id.*

March 30, 2022, Mr. Marshall alleges he began having back pain, which worsened over the next several days.[9] When Mr. Marshall was seen by a CH/CHL nurse on April 1, 2022, he claims that he indicated his back pain had worsened and he was having trouble walking and moving his lower extremities.[10] The nurse provided ibuprofen.[11]

On April 2, 2022, Mr. Marshall fell while attempting to urinate, due to the difficulties with moving his lower extremities.[12] Plaintiff alleges that his body became paralyzed after the fall, and he began experiencing urinary incontinence and the inability to defecate.[13] After informing a CH/CHL nurse of his condition, Mr. Marshall alleges he was instructed to "lay [sic] in bed."[14]  Four days after the fall, on April 6, 2022, Plaintiff was transported to Chabert Medical Center for treatment of the injuries he sustained as a result of the fall.[15] Plaintiff was subsequently taken by helicopter to University Medical Center, where he underwent emergency surgery.[16]

Plaintiff sues Craig Webre in his official capacity as Sheriff of Lafourche Parish, the Lafourche Parish Sheriff's Office ("LPSO"), Archie Chaisson III in his official capacity as Lafourche Parish President, Lafourche Parish, and CH/CHL in its individual and official capacity for compensatory and punitive damages under 42 U.S.C. § 1983 for violations of his Eighth and Fourteenth Amendment rights to adequate medical care while detained.[17] Plaintiff also seeks attorneys' fees under 42 U.S.C. § 1988.[18]

---

[9] *Id.* at ¶ 5.
[10] *Id.* at ¶¶ 6-7.
[11] *Id.* at ¶ 6.
[12] *Id.* at ¶ 7.
[13] *Id.*
[14] *Id.* at ¶¶ 7-7(a)
[15] *Id.* at ¶ 8.
[16] *Id.*
[17] *Id.* at ¶¶ 1, 16-17, 30
[18] *Id.* at ¶ 30.

Plaintiff originally filed a Petition for Damages against Defendants in state court on March 22, 2023.[19] Defendants removed the matter to the United States Court for the Eastern District of Louisiana on April 20, 2023 on the basis of federal question jurisdiction, pursuant to 28 U.S.C. § 1331.[20] On May 19, 2023, CH and CHL filed their first motion to dismiss.[21] On July 11, 2023, this Court granted Plaintiff leave to file a second amended complaint,[22] which Plaintiff filed on July 25, 2023.[23] The Court then denied Defendants' first motion to dismiss without prejudice.[24] CH and CHL now move to dismiss Plaintiff's § 1983 claims against them in the second amended complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[25] Plaintiff's § 1983 claims against CH and CHL are set forth below.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may only dismiss a complaint for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief.[26] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[27] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[28]

---

[19] R. Doc. 1-1.
[20] R. Doc. 1 at ¶ 4.
[21] R. Doc. 5.
[22] R. Doc. 18.
[23] R. Doc. 19.
[24] R. Doc. 18.
[25] R. Doc. 26-1.
[26] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).
[27] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).
[28] *Iqbal*, 556 U.S. at 678.

The Court, however, does not accept as true legal conclusions or mere conclusory statements, and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[29] "[T]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements" or "naked assertion[s] devoid of further factual enhancement" are not sufficient.[30]

However, "legal conclusions can provide the framework of a complaint, [if] they [are] supported by factual allegations."[31] "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[32] Moreover, claims of municipal liability under § 1983 are not subject to a more heightened pleading standard that other types of clams.[33]

## LAW AND ANALYSIS

Plaintiff alleges that it is the policy, practice, or custom of CH and CHL, among other defendants, to "ignore legitimate and serious complaints of pain by inmates and to fail to provide necessary and basic medical care to inmates."[34] Moreover, Plaintiff alleges that CH and CHL, among other defendants, had no established policies or rules which provided that inmates at LPDC were entitled to receive prompt medical care for serious medical conditions, such as Plaintiff's condition following his fall.[35]

---

[29] *S. Christian Leadership Conf. v. Sup. Ct. of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).
[30] *Iqbal*, 556 U.S. at 663, 678 (citations omitted).
[31] *Id.* at 679.
[32] *Id.*
[33] *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 167 (1993).
[34] R. Doc. 19 at ¶ 9.
[35] *Id.* at ¶ 14.

Plaintiff further alleges that CH and CHL, among other defendants, were aware of the inadequate staffing, training, and supervision of medical and correctional staff with regard to medical care and treatment of sick and/or injured inmates.[36] Plaintiff avers that CH and CHL were ultimately responsible for hiring, training, supervising, disciplining, and/or retaining all CH/CHL employees.[37] The Court addresses each of these claims in turn.

## I. Correcthealth, LLC (CH) is an improper party to the suit.

Plaintiff names both Correcthealth Lafourche, LLC ("CHL") and Correcthealth, LLC ("CH") in his amended complaint.[38] In their motion to dismiss, Defendants argue that CH is an improper party to the suit because only CHL (not CH) entered into a contract with LPSO to provide mental and medical services at LPDC.[39] The Court agrees.

Defendants CH and CHL attached a copy of the contract between CHL and LPSO as an exhibit to their motion to dismiss.[40] While generally a district court may only consider the contents of the pleading and attachments thereto when considering a motion to dismiss, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."[41] In this case, Plaintiff referred to a contract between Lafourche Parish/LPSO and CH/CHL in his amended complaint.[42] Accordingly, it is proper for the Court to consider the contract attached to Defendants' motion to dismiss.

---

[36] *Id.* at ¶ 10.
[37] *Id.* at ¶ 13.
[38] *Id.* at ¶ 1. Plaintiff refers to these two entities collectively as "Correcthealth," but they will be distinguished as separate entities for the purpose of this order.
[39] R. Doc. 26-1 at 17.
[40] R. Doc. 26-2.
[41] *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498-99 (5th Cir. 2000).
[42] R. Doc. 19 at ¶ 2.

The only parties to the contract at issue are CHL and LPSO.[43] Since there is no contract between CH and LPSO, CH cannot be considered a state actor for the purposes of § 1983 liability.[44] Accordingly, CH is an improperly named party to this action, and all claims against CH must be dismissed.

## II. The Application of § 1983 Municipal Liability to a Private Entity Is Distinct from the Issue of Capacity.

Plaintiff sues CHL, a private entity, in its official and individual capacities.[45] Defendants do not address the issue of capacity in their motion to dismiss, but the Court provides clarity on capacity vis-à-vis municipal liability as a threshold matter.

*Monell* did not address capacities; it held only that "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." It makes sense not to identify the capacity in which a defendant is acting when the defendant is a government entity, as "official-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent,'" while "[p]ersonal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law."[46] However, when applying the rule from *Monell* to a private company such as CHL, the question of capacity is less clear, and courts have wrestled with the issue.[47]

---

43 R. Doc. 26-2.
44 *West v. Atkins*, 487 U.S. 42, 55 (1988) (finding that a medical provider under contract with the state is a state actor for the purposes of § 1983 liability).
45 R. Doc. 19 at ¶ 1.
46 *See Hafer v. Melo*, 502 U.S. 21, 25 (1991)
47 *See, e.g.*, *Groom v. Safeway, Inc.*, 973 F. Supp. 987, 992 n. 5 (W.D. Wash. 1997) ("The distinction between official-capacity/municipal and individual-capacity actions that arises in the context in which a public entity is being sued is yet another illustration of how case law from that context does not fit where the defendant is a private corporation. Should Safeway have been held liable in its 'individual' or its 'official' capacity? It would seem clear that Safeway, as a private employer, has no 'official'-capacity, or 'municipal,' liability, and yet the 'rule' against holding Safeway vicariously liable for its employee's actions is borrowed from the official-capacity/municipal liability context, in which a plaintiff seeks to hold a public entity liable for the actions of its employees. . . . In any event . . . Plaintiff's theory could have supported a finding of liability

The recent approach has been to treat the application of § 1983 municipal liability to a private entity as distinct from the issue of capacity. In *Davison v. Rios*, the "Plaintiff name[d] Defendant CCS in its individual and official capacities."[48] However, the court reasoned, "CCS is a private entity and lacks a traditional individual or official capacity;" instead, "a party may sue Defendant CCS for municipal liability."[49] In *Mitchell v. GEO Group, Inc.*, the court similarly held while "Plaintiff seeks liability against Defendant GEO in both its individual and official capacities[,] . . . as a private entity, GEO lacks a traditional individual or official capacity."[50] "Even so," the court held, "Defendant GEO may be sued under a theory of municipal liability."[51]

Other courts have come to the same result without explicitly stating their reasoning. In *Sims v. Wexford Health*, the plaintiff sued all defendants, including the private company Wexford Health, "in their individual and official capacities."[52] In addressing Wexford Health's liability, the court simply stated, "Wexford is treated as a government entity for purposes of Section 1983 claims."[53] Similarly, in *Fields v. Trinity Food Service*, the plaintiff sued all defendants, including the private companies CoreCivic and Trinity Food Service, "in their individual and official capacities," but in addressing CoreCivic's and Trinity Food Service's liability, the court simply stated courts have

---

under either the individual-capacity standard, on which the jury was instructed, or under the standard for official-capacity/municipal liability, which requires a policy or custom that causes the harm."); *see also* Barbara Kritchevsky, *Civil Rights Liability of Private Corporations*, 26 Cardozo L. Rev. 35, 71 n. 250 (2004) ("[The distinction between official and individual capacity suits that was important in municipal liability law 'is yet another illustration of how case law from that context does not fit where the defendant is a private corporation.' . . . It appears that no court has actually used capacity analysis in determining the liability of a private corporation." (quoting *Groom*, 973 F. Supp. at 992 n. 5)).

[48] *Davison v. Rios*, No. CIV-16-374-HE, 2017 WL 9477746, at *2 (W.D. Okla. Feb. 2, 2017), *report and recommendations adopted*, No. CIV-16-374-HE, 2017 WL 1843308 (W.D. Okla. May 5, 2017).

[49] *Id.*

[50] *Mitchell v. GEO Grp., Inc.*, No. CIV-19-40-G, 2019 WL 4923986, at *2 (W.D. Okla. Apr. 10, 2019), *report and recommendations adopted*, No. CIV-19-40-G, 2019 WL 4918775 (W.D. Okla. Oct. 4, 2019).

[51] *Id.*

[52] *Sims v. Wexford Health*, No. 1:19-cv-01030-TWP-TAB, 2019 WL 2514832, at *1 (S.D. Ind. June 17, 2019).

[53] *Id.*

7

"applied the standards for assessing municipal liability to claims against private corporations that operate prisons or provide medical care or food services to prisoners."[54]

This approach, treating the question of municipal liability as separate from the question of in which capacity the private corporation is acting, is consistent with the way the Fifth Circuit has treated § 1983 claims: "Claims under § 1983 may be brought against persons in their individual or official capacity, *or against a governmental entity*."[55] In fact, the Fifth Circuit in *Baughman* recently analyzed a claim against a county, nominally in its individual and official capacities, the same as any other municipal liability claim.[56] The plaintiff alleged "the County, Dr. Guice [the jail's executive director of health services], and Sheriff Hickman are liable 'in their Official Capacities and Individual Capacities.'"[57] However, in addressing these claims, the court simply stated, "These claims, whether seeking official or individual liability, require Baughman to connect the existence of a policy, widespread and settled practice, or a failure to train to a constitutional violation."[58]

---

[54] *Fields v. Trinity Food Servs.*, No. 17-1190-JDT-cgc, 2019 WL 5268565, at *2, 5 (W.D. Tenn. Oct. 17, 2019)
[55] *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) (emphasis added). Another approach courts have taken to the issue of private company capacity under § 1983 is to treat municipal liability as an "individual capacity" theory. *See, e.g.*, *Brown v. Taylor*, No. EP-13-CV-00017-FM, 2017 WL 11449893, at *5 (W.D. Tex. Sept. 13, 2017) ("Additionally, although ostensibly suing the Avalon Defendants in their official capacities, these Defendants consist of a private corporation and private individuals. Private corporations and individuals do not have 'official capacities' for purposes of § 1983."); *Smith v. Aramark Corp.*, No. 1:20-cv-00393-JPH-DML, 2020 WL 1433864, at *2 n. 1 (S.D. Ind. Mar. 23, 2020) (alterations in original) (citations omitted) ("Mr. Smith seeks to sue each defendant in his or her individual and official capacities.  However, '[o]fficial capacity suits, . . . "generally represent only another way of pleading an action against an entity of which an officer is an agent."'  '[A]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity.' Thus, the official capacity claims are dismissed." (quoting *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985))); *Atkins v. CoreCivic, Inc.*, No. 3:21-cv-00103, 2021 WL 4773080, at *3 & n.3 (M.D. Tenn. Oct. 12, 2021) (first alteration in original) ("The FAC specifically states that '[a]ll defendants are sued in their individual and official capacities.' . . . That statement makes no sense, insofar as it applies to CoreCivic (or Hardeman County), because entities cannot be sued in a representative capacity."). However, this approach conflicts with how the Fifth Circuit classifies municipal liability separately from individual and official capacity claims. *See Goodman*, 571 F.3d at 395.
[56] *Baughman*, 935 F.3d at 311.
[57] *Id.*
[58] *Id.*

For these reasons, the Court will not label Plaintiffs' claims CHL as individual or official capacity claims. Such a label is unhelpful; the practical result of Plaintiffs' § 1983 claims against a private entity such as CHL that perform a traditional government function is that the rules for municipal liability under *Monell* apply.

### III. Plaintiff has Alleged Sufficient Facts to State a Municipal Liability Claim Against CHL.

Municipal liability under § 1983, or *Monell* liability, requires proof of three elements: 1) a policymaker, 2) an official policy or custom, and 3) a violation of constitutional rights whose 'moving force' is the policy or custom.[59] Defendants do not contest that CHL was a policymaker as to the provision of medical care in LPDC. Thus, the Court finds the Plaintiff has alleged sufficient facts to state a claim as to this element.

#### A. Plaintiff has Alleged Sufficient Facts to Support a Claim of Official Policies and/or Customs Attributable to CHL.

For purposes of *Monell* liability, an official policy may be either 1) "policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers" or 2) "A persistent, widespread practice [...] which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy."[60] In his amended complaint, Plaintiff avers CHL has maintained persistent widespread practices regarding the provision of healthcare and the staffing and training of CHL employees at LPDC, which amount to *de facto* municipal policies.[61]

---

[59] *Monell v. Dep't of Soc. Servs. of NY*, 436 U.S. 658, 694 (1978).
[60] *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir.).
[61] R. Doc. 19 at ¶¶ 13-14, 19.

**1.** ***De Facto*** **Policies Regarding Failure to Provide Adequate Medical Care**

In his amended complaint, Plaintiff alleges CHL maintained persistent, widespread practices of 1) failing to provide adequate, necessary, and/or basic medical attention to inmates at LPDC[62] and 2) ignoring legitimate and serious medical needs and/or complaints of pain by inmates.[63] Relatedly, Plaintiff alleges CHL failed to establish a policy or rule which mandated that inmates of the jail were to receive prompt medical attention relative to their serious medical needs.[64]  CHL argues Plaintiff has failed to allege sufficient facts to support a claim that these policies existed because Plaintiff has failed to plead "sufficiently numerous prior incidents."[65]

However, the case cited by CHL to support this proposition was decided on appeal from a judgment entered on a jury verdict, not at the pleading stage.[66] The Court knows of no case suggesting this level of factual support is required at the pleading stage. Rather, the relevant pleading standard, as defined by *Ashcroft v. Iqbal* (2009), provides "legal conclusions can provide the framework of a complaint, [if] they [are] supported by factual allegations."[67]

For the reasons described fully in its Order and Reasons denying Sheriff Webre's motion to dismiss,[68] the Court "draw[s] on its judicial experience and common sense"[69] to find Plaintiff's amended complaint alleges sufficient facts to support a claim that CHL

---

[62] *Id.* at ¶¶ 9, 23.
[63] *Id.* at ¶¶ 9, 23.
[64] *Id.* at ¶ 14.
[65] R. Doc. 26-1 at 15, citing *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir.1989).
[66] *Id.*
[67] *Iqbal*, 556 U.S. at 679.
[68] *See* R. Doc. 34 at 10-12.
[69] *Iqbal*, 556 U.S. at 679.

maintained insufficient policies and/or failed to maintain any policies regarding the adequate provision of healthcare at LPDC.

### 2. *De Facto* Policies Regarding Understaffing and Failure to Train

In his amended complaint, Plaintiff further alleges CHL maintained persistent, widespread practices of 1) failing to train and/or supervise the CHL employees of LPDC with regard to the medical care and treatment of sick and/or injured inmates[70] and, relatedly, 2) inadequately staffing LPDC.[71]

CHL does not contest the allegations that CHL maintained policies or practices regarding failure to train and/or inadequate staffing.[72] For the reasons described in its Order and Reasons regarding Sheriff Webre's motion to dismiss,[73] the Court "draw[s] on its judicial experience and common sense"[74] to find Plaintiff's amended complaint alleges sufficient facts to support a claim that CHL maintained a policy of failing to train or supervise the medical employees at LPDC. However, as discussed in the foregoing Order and Reasons,[75] the Court finds that Plaintiff did not allege sufficient facts of understaffing to support a claim of this policy. Accordingly, Plaintiff's claim against CHL regarding understaffing is dismissed with prejudice.

### B. Plaintiff has Alleged Sufficient Facts to Support a Claim of Deliberate Indifference Against CHL.

The third element of a *Monell* claim is proof of a violation of constitutional rights whose 'moving force' is the policy or custom.[76] Mr. Marshall alleges violations of both his

---

[70] R. Doc. 19 at ¶¶ 10, 13, 28(b).
[71] *Id.* at ¶¶ 9, 11, 28(b).
[72] *See generally*, R. Doc. 26-1. Defendants claim Plaintiff's amended complaint "vaguely refers to, without formal allegation, an issue with inadequate staffing." (R. Doc. 26-1 at 4). Beyond this statement, Defendants' motion focuses almost entirely on the issue of deliberate indifference.
[73] *See* R. Doc. 34 at 13-14.
[74] *Iqbal*, 556 U.S. at 679.
[75] *See* R. Doc. 34 at 14.
[76] *Monell*, 436 U.S. at 694.

Eighth and Fourteenth Amendment rights as a result of the *de facto* policies and/or customs of CHL.[77]

"The Eighth Amendment ensures the safety of *convicted prisoners* while due process under the Fourteenth Amendment protects *pretrial detainees*."[78] In this case, Mr. Marshall appears to have been a pretrial detainee.[79] Nevertheless, "[t]he proper analysis of each category of claims is the same, as [the Fifth Circuit's] 'Fourteenth Amendment case law concerning pretrial detainees [is based] on the Supreme Court's Eighth Amendment precedent concerning prisoners.'"[80]

A pretrial detainee may prove a constitutional violation by demonstrating either "an unconstitutional condition of confinement" or an "unconstitutional episodic act or omission."[81] These two avenues for § 1983 claims come with separate inquiries.[82] Plaintiff has clarified in his opposition to the instant motion that he alleges a violation based on an unconstitutional episodic act or omission.[83]

"To establish municipal liability in an episodic-act case, a plaintiff must show '(1) that the municipal employee violated [the pretrial detainee's] clearly established constitutional rights with subjective deliberate indifference; and (2) that this violation

---

[77] R. Doc. 19 at ¶ 17-20.
[78] *Baughman v. Hickman*, 935 F.3d 302, 306 (5th Cir. 2019) (emphasis added) (citing *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996)).
[79] R. Doc. 19 at ¶ 18. The allegations provided in Plaintiff's amended complaint do not explicitly address whether Mr. Marshall was a pretrial detainee or a convicted prisoner at the time of the alleged injury. However, his amended complaint appears to distinguish his position from "convicted prisoners" at ¶ 18. As such, the Court assumes Mr. Marshall was a pretrial detainee for the purposes of this ruling.
[80] *Baughman*, 935 F.3d at 306 (third alteration in original) (quoting *Garza v. City of Donna*, 922 F.3d 626, 634 (5th Cir. 2019)).
[81] *Cadena v. El Paso Cnty.*, 946 F.3d 717, 727 (5th Cir. 2020).
[82] *Id.*
[83] R. Doc. 25 at 5.

resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference.'"[84]

In his amended complaint, Plaintiff alleges CHL maintained the *de facto* policies regarding the provision of health care and the deficient training of employees at LPSO, discussed above, with deliberate indifference.[85] "To succeed on a deliberate-indifference claim, plaintiffs must show that (1) the official was 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' and (2) the official actually drew that inference."[86] "[O]fficial conduct must be 'wanton,' which is defined to mean 'reckless.'"[87] Deliberate indifference "requires that the defendant act with 'something more than mere negligence' but 'less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'"[88]

### 1. Plaintiff Has Alleged CHL's Policies Regarding Failure to Provide Adequate Medical Care Were Adopted with Deliberate Indifference.

Plaintiff alleges CHL maintained the inadequate policies regarding the provision of medical care, discussed above, with deliberate indifference.[89] Plaintiff avers that CHL's knowledge that the deficient policies were "inadequate and posed a danger of serious bodily harm to inmates at LPDC," and its refusal to "take action to correct these policies," indicate "deliberate indifference to the serious risks to inmates."[90] The Court agrees.

---

[84] *Cadena*, 946 F.3d at 728 (alteration in original) (quoting *Brumfield v. Hollins*, 551 F.3d 322, 331 (5th Cir. 2008)).
[85] R. Doc. 19 at ¶¶ 10, 13-14, 21, 28; *see* discussion *supra* Sec. I(B).
[86] *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2015) (quoting *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 755 (5th Cir. 2001)).
[87] *Baughman*, 935 F.3d at 307 (quoting *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017)).
[88] *Cadena*, 946 F.3d at 728 (quoting Farmer v. Brennan, 511 U.S. 825, 835 (1994)).
[89] R. Doc. 19 at ¶¶ 15, 20, 23.
[90] *Id.* at ¶ 15.

CHL argues that its conduct, even if negligent, did not rise to the level of deliberate indifference.[91] To support this contention, CHL details the contents of medical records.[92] In his opposition, Plaintiff correctly notes that for documents to be considered at the pleading stage they must be attached to the pleadings or referenced therein.[93] Plaintiff made no reference to the medical records in his amended complaint.[94] Accordingly, the Court will not consider the medical records in deciding the instant motion to dismiss.

For the reasons described fully in its Order and Reasons regarding Sheriff Webre's motion to dismiss,[95] the Court finds Plaintiff's amended complaint alleges sufficient facts to support a claim that CHL maintained insufficient policies and/or failed to maintain any policies regarding the adequate provision of healthcare at LPDC with knowledge that a serious risk of harm existed. Accordingly, the Court finds Plaintiff has alleged sufficient facts to support a claim that CHL maintained the policies regarding failure to provide adequate medical care with deliberate indifference.

### 2. Plaintiff Has Alleged CHL's Policies Regarding Failure to Train Were Adopted with Deliberate Indifference.

Plaintiff alleges CHL was deliberately indifferent in its failure to train the employees of LPDC.[96] CHL does not directly address this allegation in its motion to dismiss.[97] However, assuming, CHL failed to properly train the healthcare employees of LPDC as to the provision of necessary medical treatment, as alleged, the Court may properly infer that the existence of this deficiency in training was reckless, in and of itself,

---

[91] R. Doc. 26-1 at 11-13.
[92] *Id.* at 5-7.
[93] R. Doc. 28 at 5; *see also* Fed. R. Civ. P. 12(b)(6).
[94] *See generally* R. Doc. 19.
[95] *See* R. Doc. 34 at 17.
[96] R. Doc. 19 at ¶¶ 10, 28(b).
[97] *See generally* R. Doc. 26-1.

since it involved such a crucial issue of safety for the jail. Accordingly, the Court finds Plaintiff has alleged sufficient facts to support a claim that CHL maintained the policies regarding failure to train with deliberate indifference.

### IV. Punitive Damages Are Not Available Against a Private Entity Such as CHL Performing a Traditional Governmental Function.

Plaintiffs seek punitive damages from CHL.[98] CHL argues punitive damages are not available against private companies treated as municipal entities.[99] The Court agrees.

In *City of Newport v. Fact Concerts, Inc.*, the Supreme Court held that punitive damages are not available against a municipality for several reasons.[100] First, allowing punitive damages against a municipality would harm innocent taxpayers "because such awards would burden the very taxpayers and citizens for whose benefit the wrongdoer was being chastised."[101] Second, punitive damages typically seek "to punish the tortfeasor whose wrongful action was intentional or malicious, and to deter him and others from similar extreme conduct," but this purpose breaks down when punitive damages are sought against an entity rather than an individual because a "municipality . . . can have no malice independent of the malice of its officials."[102] Finally, the deterrent purpose of § 1983 would not be advanced by assessing punitive damages against a municipality, when that purpose could be satisfied fully by assessing those damages against the individuals who may have committed the constitutional violations at issue.[103]

Two district courts in this Circuit have extended the reasoning of *City of Newport* to private entities performing government functions. In *Moore v. LaSalle Corrections,*

---

[98] *Id.* at ¶ 72.
[99] R. Doc. 26-1 at 16, citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 260 (1981).
[100] *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).
[101] *Id.* at 263.
[102] *Id.* at 266-67.
[103] *Id.* at 669-70.

*Inc.*, the Western District of Louisiana, faced with an issue of first impression, held that the Supreme Court's reasons for denying punitive damages against a municipality compel the same result for a private entity which has assumed a traditionally governmental role.[104] Considering the nature of the private prison industry, awarding punitive damages against a private prison would harm the public because "that award, and the threat of future punitive damage awards, necessarily increases the costs of maintaining that agreement."[105] "Further, just like a municipality, a private entity like LaSalle is incapable of malicious action outside of its employees," and "[j]ust like a municipality, a company has employees against whom the deterrent purpose of § 1983 may be actually effective."[106] Faced with the same issue of § 1983 punitive damages claims against a private company, the Middle District of Louisiana in *Carter v. Gautreaux*, citing *Moore*, held "punitive damages are not available in this case."[107]

The Court finds the reasoning in *Moore* persuasive. For the reasons stated therein, punitive damages are not available against a private entity such as CHL performing the traditional governmental function of operating the medical facilities of a prison. Plaintiffs' claims for punitive damages against CHL must be dismissed.[108]

---

[104] *Moore v. LaSalle Corr., Inc.*, 429 F. Supp. 3d 285, 289 (W.D. La. 2019), *appeal filed*, No. 20-30739 (5th Cir. Nov. 24, 2020).

[105] *Id.*

[106] *Id.*

[107] *Carter v. Gautreaux*, No. 19-105-SDD-EWD, 2021 WL 2785332, at *6 (M.D. La. July 2, 2021).

[108] Plaintiffs claims for punitive damages against Sheriff Craig Webre, Archie Chaisson, and Lafourche Parish (see R. Doc. 19 at ¶ 20) must also be dismissed *sua sponte*. While Sheriff Webre did not raise this issue in his motion to dismiss (R. Doc. 21-1), the Sheriff is sued in his official capacity and therefore the suit is treated as a suit against the municipal entity of LPSO (*see* R. Doc. 34, Order and Reasons, at 6). Mr. Chaisson is also sued in his official capacity as President of Lafourche Parish (R. Doc. 19 at ¶ 1) and therefore the suit is treated as a suit against the municipal entity of the Parish. For the reasons discussed *supra*, Section IV, a municipal entity may not be subject to the imposition of punitive damages. Accordingly, Plaintiffs claims for punitive damages against Sheriff Webre, Archie Chaisson, and Lafourche Parish are hereby **dismissed with prejudice.**

## CONCLUSION

**IT IS ORDERED** that the motion to dismiss[109] is **GRANTED** as to Defendant Correcthealth, LLC (CH) and **DENIED** as to Defendant Correcthealth Lafourche, LLC (CHL), except as to the claim regarding understaffing, which is **DISMISSED WITH PREJUDICE**. Claims by Plaintiff for punitive damages against all defendants are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this 13th day of September, 2023.

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[109] R. Doc. 21-1.